UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

01 MAR 19 PM 3:29

BARADO L. MURRAY, ]
]
   Plaintiff(s), ]
]
vs. ] CV-00-N-3751-W
]
SHERIFF TED SEXTON, et al., ]
]
   Defendant(s). ]

**ENTERED**

**MAR 19 2001**

**Memorandum of Opinion**

### I.   Introduction

The *pro se* plaintiff, Barado L. Murray ("Murray"), brings this action against defendants Sheriff Ted Sexton ("Sexton"), Chief Jailer James Taggart ("Taggart"), Deputy Sheriff Ron Abernathy ("Abernathy"), Deputy Sheriff Kenny Shipman ("Shipman"), Deputy Sheriff Jeff Holloway ("Holloway"), Deputy Sheriff Andre Simpson ("Simpson") and Deputy Sheriff Robert Bynum ("Bynum"), by which he seeks redress under 42 U.S.C. § 1983 for alleged violations of certain federal rights, as well as the laws of the state of Alabama. The court has for consideration the motion of defendants to dismiss all claims against them, filed on January 17, 2001 (Doc. #2). The motion will be **GRANTED IN PART** and **DENIED IN PART**.

### II.   Standard for Decision

A Rule 12(b)(6) motion tests the legal sufficiency of the Complaint. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997). The court may dismiss a complaint under that rule only where "it appears beyond doubt that the plaintiff can prove



no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of ruling on a 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations. Moreover, it views them in a light most favorable to the non-moving party. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Burch v. Apalachee Community Mental Health Servs., Inc.*, 840 F.2d 797, 798 (11th Cir. 1988) (en banc). The court's review, however, is circumscribed by the heightened pleading requirements in this circuit for actions brought under 42 U.S.C. § 1983. As the Eleventh Circuit has noted, "while Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing [his] complaint, this circuit, along with others, has tightened the application of Rule 8, with respect to § 1983 cases in order to weed out non-meritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Investments Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998) (citations omitted). Therefore, in resolving defendants' motions to dismiss, this court is guided by both the 12(b)(6) standard and the heightened pleading requirement applicable to such cases in this circuit.

## III.  Allegations of the Complaint[1]

On or about January 1, 1999, Murray was arrested by an Alabama State Trooper in Tuscaloosa, Alabama, and charged with driving under the influence. (Complaint at ¶ 10). Murray was subsequently transported to the Tuscaloosa County Jail, where he was confined. (*Id.*). Murray maintains that he was not permitted to telephone his wife and, after repeatedly requesting access to a telephone, a female jailer sprayed pepper spray into his

---

[1] As noted in the text, these are "facts" for purposes of this opinion only. They may not be the actual facts.

2

eyes. (*Id.* at ¶ 12). According to Murray, in response to his request for assistance, defendants Holloway, Simpson and Bynum pulled him out of his jail cell and proceeded to beat him. (*Id.* at ¶¶ 14-15). Following this alleged beating, Murray maintains that defendants Holloway, Simpson and Bynum put him in a straight-jacket and placed him in an isolation cell. (*Id.* at ¶¶ 17-18). A few hours later, the straight-jacket was removed by defendant Simpson. (Complaint at ¶ 18). Murray eventually posted bond and was released from the Tuscaloosa County Jail. (*Id.*).

According to Murray, over the course of the days and weeks following his arrest and detainment, he complained that excessive force was used against him and demanded that the Tuscaloosa County Jail perform an investigation. (*Id.* at ¶ 23). In response to his inquiries, Murray maintains that Abernathy took a photograph of his beaten face, his tape-recorded statement, and a written statement from at least one detainee-witness. (*Id.*). According to Murray, his repeated requests for information as to the outcome of any internal investigation into his complaints were ignored. (*Id.* at ¶¶ 24-25). Murray further asserts that a majority of documents, statements, photographs, and recordings of the incident have been lost, destroyed, or otherwise not preserved. (Complaint at ¶ 25).

As described above, Murray maintains that defendants Holloway, Simpson and Bynum personally participated in the alleged January 1, 1999, beating. (*Id.* at ¶¶ 13-15). As to defendants Taggart and Sexton, Murray contends that they are "duty-bound to train, supervise Jail staff and officers, as well as to oversee Jail operations; develop, enact and enforce policy(ies) regarding the treatment of, and use of force involving jail detainees; and to properly investigate, make and preserve records regarding complaints of jailer

3

misconduct made by detainees . . .". (*Id.* at ¶ 27). Regarding defendants Abernathy and Shipman, he states that these officers "are [also] responsible and duty-bound to properly investigate, make and preserve records regarding complaints of Jailer misconduct made by detainees. . . ." (*Id.* at ¶ 28).

## IV. Discussion

### A. 42 U.S.C. § 1983

#### 1. Official Capacity Claims

In Counts I, V, and VI of the complaint, Murray brings claims against the individual defendants under § 1983 in both their official and individual capacities. The individual defendants argue that the official-capacity claims are barred by the Eleventh Amendment to the United States Constitution.

##### a. Monetary Damages

It is well settled that the Eleventh Amendment insulates a state from suit in federal court unless the state's immunity has been abrogated by Congress or waived by the state. *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1999); *Carr v. City of Florence, Ala.*, 916 F.2d 1521 (11th Cir. 1990). It is the settled law of this Circuit that Congress has not abrogated the Eleventh Amendment immunity in § 1983 suits and the state of Alabama has not and cannot consent to being made a defendant in any court. *Carr*, 916 F.2d at 1525; *Alabama v. Pugh*, 483 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978).[2]

---

[2] The Supreme Court has said,

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974);

4

Because Alabama law deems sheriffs "executive officers of the state," a lawsuit against a sheriff in his or her official capacity seeking retrospective monetary relief is, in essence, a lawsuit against the state of Alabama. *Carr*, 916 F.2d at 1425 (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)). Therefore, sheriffs are immune from actions, brought against them in their official capacities, seeking compensatory or punitive damages. *Id.* The same is true of sheriff's deputies, *Carr*, 916 F.2d at 1526, and jailors. *Lancaster*, 116 F.3d at 1429-1430.

Therefore, Sheriff Sexton as well as Deputies Taggart, Holloway, Simpson and Bynum are entitled to dismissal of plaintiff's § 1983 claims for compensatory and punitive damages insofar as those claims are against them in their official capacities. Accordingly, these claims are due to be dismissed as a matter of law.

### b. Injunctive & Declaratory Relief

Murray also seeks injunctive and declaratory relief. Specifically, Murray requests that this court enjoin defendants Sexton, Taggart, Abernathy and Shipman to:

> [1] commence adequately and properly training/re-training and supervising his/its jailers so as to prevent officers' perpetrating future constitutional deprivations, such as those perpetrated by Defendants Holloway, Simpson and Bynum against Plaintiff; [2] adopt a policy to not only adequately, properly and consistently investigate and, as necessary, discipline Tuscaloosa County jailers, but to also preserve and protect investigation

---

*Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978).

5

> information and guard against its loss and/or destruction; [3] cease and desist protecting/"covering"- for Tuscaloosa County jailers who physically abuse Jail detainees and inmates; [4] adopt a policy guaranteeing any person, and/or that person's representative, who makes a complaint regarding Tuscaloosa County jailer or deputy misconduct, the right to inspect and copy any such complaint, investigation statement(s), forms, photos, audio/video record(s), and the like; [5] adopt a policy guaranteeing any person, and/or that person's representative – who makes a complaint regarding jailer misconduct to Tuscaloosa County's Sheriff's, and/or the Jail staff and/or the Tuscaloosa County's Sheriff's Internal Affairs Division – with a written report from the Sheriff or his designated representative of the findings, conclusions and actions taken, if any, by the Sheriff within a reasonable time (not exceeding fifteen days) following the conclusion of the investigation of such complaint.

(Complaint at ¶ C). In his Amended Complaint, seeking declaratory relief, Murray asks this court to declare:

> [T]hat Defendants Taggert and/or Abernathy and/or Shipman and/or Sexton violated, at the very least, public policy [1] by acting with reckless disregard or intent when these Defendants, individually and/or in accord with one another, failed or refused to preserve and protect said Internal Affairs file (and its contents); [2] by failing or refusing to notify Plaintiff of the results of their Internal Affairs investigation in a timely (that is, in somewhat less than the 15 months it took) and reasonable (that is, complete) manner; [3] by failing or refusing to take any disciplinary action against the other Defendant jailers who, on the incident date, aided and assisted Defendant Holloway in his unjustifiable and excessive physical abuse of plaintiff.

(Amended Complaint, Count VIII).

As mentioned above, when federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief paid from the state treasury. *See Carr*, 916 F.2d at 1524. However, the Eleventh Amendment does not insulate state officials acting in their official capacities from

6

suit for prospective declaratory and injunctive relief to remedy violations of federal constitutional law. *See Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) (holding that plaintiff seeking prospective relief from that state must name as a defendant a state official rather than the state or state agency directly even though in reality the suit is against the state). Accordingly, the court finds that Murray's § 1983 claims seeking declaratory and injunctive relief against the individual defendants in their official capacities are proper to the extent these defendants are still employed by the state of Alabama.

The defendants argue, however, that even if Murray's claims for injunctive and declaratory relief are not barred by the Eleventh Amendment, he lacks article III standing to pursue those claims. According to the Eleventh Circuit in *Cone Corp. v. Florida Dept. of Transp.*, 921 F.2d 1190, 1203-04 (11th Cir. 1991), where a plaintiff seeks declaratory and injunctive relief, he or she must demonstrate: (1) a likelihood of future injury; (2) a likelihood that the defendant(s) will cause the anticipated injury; and (3) that the relief plaintiff seeks will likely prevent such injury from occurring. *Id.* at 1204, 1205.

With respect to the first requirement, "[t]he plaintiff must present 'specific, concrete facts' showing that the challenged conduct will result in a 'demonstrable, particularized injury' to the plaintiff so that the plaintiff 'personally w[ill] benefit in a tangible way' from court action. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210 (1975)). As to the second requirement, the plaintiff must establish a "'fairly traceable' nexus between the threatened deprivation of the constitutional right and the action of the defendant." *Id.* (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41-42, 96 S. Ct. 1917, 1924-26 (1976); *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325 (1984)). The Supreme

7

Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) is instructive in light of the present facts.

In *Lyons*, Adolph Lyons, an African-American man, was pulled over at 2:00 a.m. by Los Angeles police officers for driving an automobile with a burned out tail light. *Lyons*, 461 U.S. at 97-98. According to Lyons, the officers, without provocation or justification, applied a "chokehold" rendering him unconscious and causing permanent damage to his larynx. *Id*. Lyons sought an injunction against the LAPD barring the use of control holds. *Id*. at 98. Rejecting Lyons' request for injunctive relief, the Supreme Court held:

> Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id*. at 105. The Court further explained that "the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate. *Id*. at 112. The Eleventh Circuit has likewise acknowledged that the likelihood or injury is a prerequisite for standing to obtain equitable relief. *See, e.g., Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989) (plaintiff

8

bitten by a police dog had not have standing to seek declaratory and injunctive relief absent showing that an unlawful seizure is likely to recur).

Similar to the Supreme Court's holding in *Lyons*, this court finds that even if the evidence demonstrates that the defendant-officers used excessive force on or about January 1, 1999, in connection with Murray's arrest for driving under the influence, there is no evidence to suggest a real or immediate threat that he would again be detained and arrested for driving under the influence (or any other offense), beaten and placed in a straight-jacket by Tuscaloosa County Jailers, only to subsequently learn that the documents, statements, and photographs recording the incident were lost and/or destroyed. *See Lyons*, 461 U.S. at 105. The fact that roughly one year has elapsed since the alleged incident, and similar incidents have apparently not recurred, speaks for itself. Murray's requests for injunctive and declaratory relief will be dismissed as a matter of law.

### 2. **Individual Capacity Claims**

As previously noted, in Counts I, V and VI of the Complaint, Murray also brings § 1983 claims against defendants Sexton, Taggart, Holloway, Simpson and Bynum in their individual capacities. The defendants argue that Count I should be dismissed because it seeks relief on behalf of someone other than the plaintiff, and Counts V and VI are due to be dismissed because they are founded upon a respondeat superior theory of liability.

#### a. **Count I - Unlawful Seizure & Excessive Force**

In Count I of the original Complaint, Murray asserts that defendants Holloway, Simpson and Bynum violated the rights guaranteed to "LaDarious" under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (Complaint at ¶ 30). On

9

January 30, 2001, Murray amended the Complaint to strike the name "LaDarious" and insert the term "Plaintiff." (Amended Complaint at ¶ 5). For this reason, the defendants' argument in support of dismissal is moot. The motion to dismiss claims against defendants Holloway, Simpson and Bynum, in their individual capacities, will be denied.

### b. Counts V & VI - Failure to Train/Supervise; Failure to Enact/Enforce Policy

The defendants contend that the allegations set forth in Counts V and VI of the Complaint, purporting to state a claim under § 1983 against defendants Sexton and Taggart in their individual capacities, are founded upon a respondeat superior theory of liability and, for this reason, are due to be dismissed. The court disagrees.

In *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 46 L. Ed. 2d 611 (1978), the Supreme Court held that the theories of respondeat superior and vicarious liability may not be utilized in civil rights action brought pursuant to § 1983. Instead, a public official may be held liable in a § 1983 action only if he had some personal participation in the alleged violation or there was a causal relationship between the conduct of such supervisory official and the alleged constitutional deprivation. *See Braddy v. Florida Dept. of Labor & Emp. Sec.*, 133 F.3d 797, 801 (11th Cir. 1998) (indicating that supervisory liability under § 1983 "must be based on something more than the theory of respondeat superior"). A "causal connection can be established when a history of widespread abuse puts the responsible official on notice of the need to correct the alleged deprivation, and he [she] failed to do so." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The Eleventh Circuit has described this standard as "extremely rigorous," *see*

*Braddy*, 133 F.3d at 802, and satisfied only when the constitutional deprivations are "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671.

Applying the foregoing concepts to Murray's claims against Sheriff Sexton and Chief Jailer Taggart, the court cannot say that those claims are based solely upon a theory of respondeat superior. Indeed, Murray clearly alleges that the defendants' intentional failure to train/supervise jailers and to enact/enforce policies designed to prevent inadequate training and supervision of jailers, proximately resulted in the constitutional deprivations of which he complains. While there is little doubt that Murray faces an uphill battle in establishing the causal connection he alleges, the court cannot conclude, at this early stage, that Murray has failed to state a claim against these defendants.

### B. State Law Claims

#### 1. Tort Claims

In Counts II, III, and IV of the Complaint, Murray seeks to hold defendants Holloway, Simpson and Bynum liable, individually and in their official capacities, under the state law theories of assault and battery, intentional infliction of emotional distress, and negligence. The defendants maintain that they are immune, in both their official and individual capacities, from Murray's state law tort claims.

##### a. Official Capacity Claims

As discussed in detail above, the Eleventh Amendment insulates state officials from suit in federal court unless immunity has been abrogated by Congress or waived by the state. *See Lancaster*, 116 F.3d at 1429. Alabama has not waived Eleventh Amendment

immunity and Congress has not abrogated Alabama's immunity. *See Alabama v. Pugh*, 483 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978); *Carr*, 916 F.2d at 1525. For this reason, deputies Holloway, Simpson and Bynum are immune from claims brought against them in their official capacities. These claims are due to be dismissed as a matter of law.

### b. Individual Capacity Claims

Article I, Section 14 of the Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. 1., § 14 (1901). While Section 14, on its face, purports to cover only the state itself, courts have construed Alabama's sovereign immunity protections to extend to sheriffs, deputy sheriffs and even jailors. *See Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994); *Phillips v. Thomas*, 555 So. 2d 81, 82 (Ala. 1989); *Lancaster*, 116 F. 3d at 1431. Significantly, sovereign immunity protects state officials in both their official and individual capacities when the lawsuit is, in essence, one against the State. *See Alexander*, 652 So. 2d at 1144; *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996). In determining whether a suit against a state officer is in fact a suit against the State, the court considers factors such as the nature of the action and relief demanded. *See Phillips*, 555 So. 2d at 83. For instance, "[t]he Alabama Supreme Court has held that a suit brought against a sheriff or a deputy sheriff in his individual capacity alleging negligence in the performance of his statutory duties should be treated as a suit against the state." *Lancaster*, 116 F.3d at 1431 (quoting *Alexander*, 652 So. 2d 1142, 1144 (Ala. 1994)).

The defendants have failed to cite, and this court has yet to locate, a relevant state court decision indicating that a sheriff or deputy sheriff is immune, in his or her individual

12

capacity, from the commission of an intentional tort. Moreover, with respect to Murray's negligence claim, there is no suggestion on the part of the defendants that the alleged conduct occurred while the deputies were performing their statutory duties. The motion to dismiss the individual capacity claims for failure to state a claim will be denied.

### 2. Injunctive & Declaratory Relief

With respect to both his tort claims and his claims brought pursuant to Ala. Code § 36-12-2,[3] Murray seeks injunctive and declaratory relief against defendants Sexton, Taggart, Abernathy and Shipman. As discussed above, in a case such as this one, where a cause of action has already accrued and there is no anticipated future injury, a court should not entertain an action for declaratory and/or injunctive relief. Accordingly, these claims will be dismissed as a matter of law.

### V. Conclusion

By a separate judgment to be entered contemporaneously herewith, the motion to dismiss the individual capacity claims against defendants Sexton, Taggart, Holloway, Simpson and Bynum will be **DENIED**. All claims against defendants Sexton, Taggart, Abernathy, and Shipman, in their official capacities, will be **DISMISSED WITH PREJUDICE**.

---

[3] Ala. Code § 36-12-2 address the duty of public servants to accurately maintain and preserve public records. In pertinent part, the statute provides:

> All public officers and servants shall correctly make and accurately keep in and for their respective offices or places of business all such books or sets of books, documents, files, papers, letters and copies of letters as at all times shall afford full and detailed information in reference to the activities or business . . . and all of the books, documents, files, papers, letters, and copies of letters so made and kept shall be carefully protected and safely preserved and guarded from mutilation, loss or destruction.

Ala. Code § 16-12-1 (1991).

Finally, all claims for injunctive and/or declaratory relief will be **DISMISSED WITH PREJUDICE**.

Done, this __18th__ of March, 2001.

                                              EDWIN L. NELSON
                                     UNITED STATES DISTRICT JUDGE